**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 12-cv-03003-RM

David Miley

Plaintiff,

v.

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,

Defendant.

---

# ORDER

---

## I. INTRODUCTION

Plaintiff David Miley (plaintiff), first applied for social security disability insurance benefits (DIB) in January 2009, was found "not disabled" and did not seek review of that decision. (ECF Nos. 9, pp.64-74; and 16, p.1). On May 6, 2010, plaintiff again applied for DIB and supplemental social security income (SSI) alleging disability beginning January 1, 2010. (ECF No.9, pp142-49). The Administrative Law Judge (ALJ) denied plaintiff's application for DIB and SSI on September 19, 2011. (ECF 9, pp18-25). This denial became the Commissioner of Social Security's (Commissioner) final decision on September 19, 2012, when the Appeals Council denied plaintiff's appeal of the ALJ's decision. (ECF 9, pp. 1-4). Plaintiff now seeks review of that final decision.

## II STANDARD OF REVIEW

An individual seeking disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5). The Act defines "disabled" as an "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A).

To meet this burden, a plaintiff must provide medical evidence of both, an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and of the severity of that impairment during the time of his/her alleged disability. 42 U.S.C. § 423(d)(3); 20 C.F.R. §§404.1512(b) and 416.912(b). A plaintiff is disabled only if his impairments are of such severity that s/he is not only unable to do his/her previous work but cannot, considering his/her age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. 42 U.S.C. §423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§404.1520 and 416.920; *Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988). In reviewing a decision of the Commissioner, the court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *Grogan v. Barnhart,* 399 F.3d 1257, 1261-62 (10th Cir. 2005). The court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner even if the court might have reached a different conclusion. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994).

## III BACKGROUND

### A. General

Plaintiff was born on August 27, 1964. (ECF No. 9, p.142). He attended special education classes in middle and high school, and attended two years of college. (ECF No. 9, p.197, 243-44).

Plaintiff's work history included HVAC installation, maintenance, security, and laundry distribution. (ECF No. 9, pp.199-209). His last work, a maintenance position with Colorado Springs World Arena, ended in April 2010. (ECF No. 9, pp.170, 200). In this position plaintiff was on call two to three days a month, for two to eight hours per day[1]. (ECF No. 9, p.200). Plaintiff took down stages and spotlights and lifted heavy (75-110 pound), objects in this work. (ECF No. 9, pp.199-200).

Plaintiff applied for DIB and SSI, alleging disability as of January 1, 2010 due to " epidermalysis [sic] ballosa simplex form dowling meara[2] , back problems and learning problems." (ECF No. 9, p.188; see also pp.63, 73). At the time of plaintiff's filing, he was using various prescribed ointments, over the counter aquaphor ointment and/or Vaseline and Ibuprofen for his skin condition and pain. (ECF No. 9, pp.192-193, 196, 218, 236.)

On July 10, 2010, plaintiff's wife completed plaintiff's Function Report. (ECF No. 9, pp 211-219.) She reported that plaintiff had two different kinds of blisters and thick callouses which crack, all over his body. (ECF No. 9, p.211). She also reported that: plaintiff's fingers, hands and feet were very stiff; he sometimes had difficulty walking; he had a hard time doing anything with his hands; and he had no fingernails. *Id.* She reported that plaintiff's daily activities were limited and he required her to assist him sometimes even for personal care. (ECF No. 9, p.212). His wife reported that she and sometimes his children, handle the household chores and meal preparation. (ECF No. 9, pp.212-13).

Plaintiff stated he used to prepare food however he is now limited to preparing a sandwich once or twice a week. (ECF No. 9, p.213). He reported going outside a couple of times a week in a car which he drives only rarely. (ECF No. 9, p.214). Plaintiff's hobbies and interests included: watching TV, listening to music, and reading when he can "handle the book." (ECF No. 9,

---

[1] The record is somewhat inconsistent on this point given plaintiff's statement that he worked one to two days per month for World Arena, changing over the stage and sets. (ECF No.9, p.180).

[2] Epidermolysis bullosa is a term describing a group of inherited chronic non-inflammatory skin conditions in which large bullae [fluid-filled blisters] and erosions result from slight mechanical trauma. Bullosa simplex is a form in which lesions heal rapidly without scarring. Stedman's Medical Dictionary, 654 (28th Ed. 2006).

p.215). He attends church once a week when he is able. *Id.* He can walk a few feet but needs to stop and rest every few minutes and is very limited in his movements being unable to lift, squat, bend, reach, climb stairs, do household tasks, or use his hands very well. (ECF No. 9, p.216). He reported that he is able to concentrate, could handle stress and changes in routine, follow instructions and has no problem with authority figures. (ECF No. 9, pp.216-17). Plaintiff 's July 29, 2010 "Personal Pain Questionnaire" reported sharp, aching pain in his hands, feet, legs and arms, aggravated by movement, heat and cold weather. (ECF No. 9, p.219.)

**B. Plaintiff's Medical Records.**

Stanford University Hospital medical records[3] from January and February1989 document plaintiff's history of a life-long blistering disorder and diagnosis of epidermolysis bullosa (EB). (ECF No.14, pp.277-287). UCSF Stanford Health Service medical records from June 1999 document plaintiff's comprehensive skin examination and continuing diagnosis of an intermittent blistering disorder with palmoplantar keratoderma[4] and onychodystrophy[5]. (ECF No.14, pp 273-276.)

On May 5, 2010, plaintiff saw Edwin Telfer, D.O., for treatment. (ECF No.0, pp 257-62). At that time, plaintiff self-reported: that he had: EB since birth; symptoms of depression and loss of sleep; pain, weakness, numbness on his back, feet and hands; skin that bruised easily; and rashes, scars and sores on his skin that would not heal. (ECF No.9, p.260). Dr. Tefler's treatment notes reflect plaintiff reported that he had a "scaley" hand rash, recent insomnia and increasing fatigue although he sometimes walked 5 miles. (ECF No.9, p.262). Dr. Telfer prescribed medication, creams ointments and increasing daily exercise of walking 5 miles. *Id.* Plaintiff's Disability Report documents that on September 10,

---

[3] These medical records were provided to the Appeals Council on review but were not available to the ALJ when she made her decision. The record contains no medical records after 2000 until May 5, 2010.
[4] Generalized growth and/or thickening of the epidermis (thickened skin) on the soles of the feet and/or palms of the hands. Stedman's Medical Dictionary, 1024 (28th Ed. 2006).
[5] Progressive changes in the nails occurring as a congenital defect or any illness or injury that may cause a malformed nail. Stedman's Medical Dictionary, 1367 (28th Ed. 2006).

2010, Dr. Telfer ordered a back x-ray which showed mild degenerative changes in plaintiff's lower lumbar spine. (ECF No.9, pp.224-225, 242).

On September 9, 2010, Charlene Borja, D.O., conducted a consultative examination of plaintiff. (ECF NO.9, pp. 243-247). Dr. Borja observed that plaintiff: could ambulate in and out of the examination room and on and off the examination table with mild discomfort; needed assistance putting on and taking off his socks; had a single two-centimeter (0.78 inch), non-tender blister on his right forearm; had areas of hypopigmentation throughout his body; had bilateral thickened soles covered with calluses on his feet; had thickened, yellow nails which appeared like warm-eaten [sic] wood; and was unable to appreciate pressure or temperature on the bottom of his feet but could do so at his hands. (ECF No.9, p.245).

Dr Borja noted plaintiff's gait was slow but not guarded, hesitant, or limping. *Id.* She found normal range of motion with mild discernible discomfort and bilateral 5/5 (normal) strength in plaintiff's upper and lower extremities.[6] (ECF No.9, p.247). She diagnosed plaintiff with: Epidermolysis bullosa simplex – Dowling Meara recommending "[c]ontinue with supportive care; low back pain or strain with mild degenerative changes in his lumbar spine and a learning problem. (ECF No 9, p.247).

In her resulting functional assessment, Dr. Borja opined that plaintiff was able to: (1) walk or stand 4-6 hours in an 8-hour day with frequent breaks every 1-2 hours; (2) sit for an unlimited time in an 8-hour workday; (3) do routine lifting and carrying up to 25-30 pounds but no repetitive lifting; (4) do routine, but not repetitive, postural activities such as bending, squatting, stooping and crouching; (5) do

---

[6] Muscle strength is rated on a scale of 0/5 to 5/5: 0/5:= no contraction; 1/5 = muscle flicker, but no movement; 2/5 = movement through a full range of motion, but not against gravity; 3/5 = movement through a full range of motion, but not against resistance by the examiner; 4/5 = movement possible against some resistance by the examiner and 5/5 = normal strength. *Oxford Scale of Muscle Strength.*

unlimited routine manipulative activities involving upper extremity and hands however repetitive reaching above the shoulders was not recommended; and (6) plaintiff required limitations on unprotected heights, stairs, and ladders due to "pain in his feet which rendered him unreliable and likely a harm to himself and others". (ECF NO.9, p.247).

Elizabeth Piantanida, M.D., a board certified dermatologist (ECF NO.9, p.238), saw and examined plaintiff for the first time on October 15, 2010, to evaluate him and provide medical documentation for his application for " Medicare disability." (ECF NO.9, p.263). Based on her examination Dr. Piantanida documented: a crusted papule[7] on plaintiff's left scalp; two 8 mm (0.31 inches), resolving bullae on his right 5th digit and left dorsal surface of his hand; marked waxy yellow hyperkeratosis[8] on plaintiff's hands and feet; a pincer deformity on all nails; and scarring and chronic pigmentary changes noted in glove/soak distribution and on his arms/shoulders. *Id.*

Based on that examination, Dr. Piantanida completed a Residual Functional Capacity ("RFC") Questionnaire reporting that plaintiff had: bullae on dorsal surface of his hands; hyperkeratosis of palms and soles; pain with movement of hands and walking; an abnormal gait; tenderness; depression at not being able to do what he used to do; pain that was often severe enough to interfere with attention and concentration; and impairments which had lasted or could be expected to last at least 12 months. (ECF No.9, pp. 252-253.)

On the basis of her October 15, 2010, examination, Dr. Piantanida opined that plaintiff's functional limitations included: (1) inability to walk without rest or severe pain; ability to sit more than two hours before needing to get up, etc.; ability to stand 20 minutes before needing to sit down, walk around, etc.; ability to stand/walk less than 2 hours total in an 8-hour work day; and an ability to sit about two hours total in an 8-hour work day. (ECF No.9, pp. 253-254.) She further opined that:

---

[7] A circumscribed, solid elevation up to 1 cm (0.39 inch) in diameter on the skin.
[8] Thickening of the outermost layer of the epidermis. Stedman's Medical Dictionary, 921 (28th Ed. 2006).

plaintiff needed to: walk every 30 minutes for about five minutes during an 8-hour work day; take 10-15 minute unscheduled breaks daily and could occasionally lift and carry 20 pounds, could not climb ladders but could occasionally twist, stoop, crouch, and climb stairs. (ECF No.9, pp.253-255). She found that plaintiff could: grasp, turn, twist objects with his hands, and do fine manipulations with his fingers, less than 10% of the time; reach (including overhead) 50% of the time; and opined that any repetitive movement or trauma to Plaintiffs' hands and feet would make his condition worse. (ECF No.9, pp.252-256). Finally, Dr. Piantanida concluded that because plaintiff would have good days and bad days, he would likely be absent from work more than four days per month. (ECF No.9, p. 256). She noted that these limitations should first apply on October 15, 2010, the date of plaintiff's first visit. *Id.*

Upon her second examination of plaintiff on June 10, 2011, Dr. Piantanida completed a "Listing Questionnaire" in which she opined that, based on her examination which showed blistering, deformation and extensive hyperkeratosis (thickened skin), plaintiff met the listing of EB as of October 15, 2010. (ECF No.9, pp.264-65, Listing of Impairments – Section 8.03).

In a letter dated December 19, 2011, Dr. Piantanida further stated that she examined plaintiff on October 15, 2010 and June 10, 2011, for EB, a chronic condition characterized by thickening and painful blistering of the skin, especially of the hands and feet, which is worsened by trauma and friction of the skin. (ECF No.9, p.271). She opined the thickness of the skin on plaintiff's hands and feet severely limited his hands' fine motor skills and that limiting the use of his hands and feet would afford partial control of his condition. *Id.*

**C. Administrative Hearing and Agency Decision**

Plaintiff requested a hearing after the September 22, 2010, Commissioner's determination that plaintiff was not disabled. (ECF No.9, pp.61-62, 89-90).

The ALJ convened a hearing on July 20, 2011, where plaintiff testified that he had a learning disability, was in special education from 7th grade through high school but had two years of college education. (ECF No.9, pp. 33, 35).

Plaintiff stated that his "big problem" was his skin disorder, although he did have some shoulder pain, and low back pain. (ECF No.9, p.35). He further testified that he could sit for about 15-20 minutes; stand two to three minutes; walk approximately ten feet because of blisters and calluses on his feet; and lift five pounds. (ECF No.9, p.36). Upon questioning by the ALJ, plaintiff stated that it would be difficult for him to lift a piece of paper from the table because his fingers were stiff on his right hand and those on his left hand were "like arthritis." *Id.*

Plaintiff and his wife have four children ages 11-15. (ECF No.9, p.37.) Plaintiff's wife receives benefits based on her disabling epilepsy. (ECF No.9, pp.36-39). Plaintiff testified that the last time he drove was in 2009; his wife drives their children to school and plaintiff believes she had not had a seizure since 1986. (ECF No.9, pp.36-40). In addition to taking the children to school, his wife takes care of everything: the shopping, laundry and dishes; keeps their apartment clean; and cooks the meals. (ECF No.9, pp.38-40, 45-46.). His children also help with the cooking and household chores. (ECF No.9, pp.45-46.).

Plaintiff testified that his daily activities consist of watching TV, playing board games such as Yahtzee, reading, listening to music, and taking a 1 ½ hour nap. (ECF No.9, pp.39-41, 52.) When plaintiff's back and foot pain allow, he attends his children's extracurricular activities but has to sit and stand, or sit in the van where there are cushioned seats. (ECF No.9, pp.39-40). He attends church once every three months and has no problems sitting there because the seats were cushioned. (ECF No.9, pp.41-42, 47-48.) At the time of the hearing plaintiff was taking no prescribed medications, denied use of tobacco, alcohol and illegal drugs. (ECF No.9, pp.41-43.).

Upon examination by his attorney, plaintiff testified that Dr. Borja did no testing, asked him a few questions, looked at his fingers, and did not check the rest of his body. (ECF No.9, pp.46-47.)[9] Plaintiff also reported that he wore cotton clothing and could get blisters from tight or semi-tight clothing. (ECF No.9, p.48.) He had noted the "blotches" on his skin were where he had previous lesions on his legs, the top of feet, the palms of his hands, and the soles of his feet. (ECF No.9, pp.48-49.) He testified that his last, middle and fourth fingers became numb "once in a while" and that his condition including the numbness, was adversely affected by both hot and cold temperatures. (ECF No.9, pp.50-51.). Plaintiff concluded his testimony stating that when one of his blisters pops it "takes a lot out of [him] so [he] feel[s] . . . exhausted . . .drained . . . it's like losing blood." (ECF No.9, p.54.).

The vocational expert ("VE") classified Plaintiff's past work as maintenance worker medium duty jobs with an SVP of two (specific vocational preparation][10]. (ECF No.9, pp.54-55.) The ALJ posed a detailed hypothetical question to the VE involving an individual of the same age, education and past work experience as plaintiff, who could only lift and carry 10 pounds frequently, 20 pounds occasionally; in an eight-hour work day could stand or walk with normal breaks, for a total of four hours and sit with normal breaks, for a total of six hours; could perform pushing and pulling motions with upper and lower extremities; could perform some postural activities such as stooping, climbing, crouching, kneeling and crawling within the previous weight restrictions only occasionally; could reach overhead only occasionally and must avoid unprotected heights and moving machinery as well as climbing ladders, ropes or scaffolds; asking if such an individual could return to past work. (ECF No.9, pp.55-56). The VE testified the hypothetical individual could not. (ECF No.9, p.56).

---

[9] This testimony is inconsistent with Dr. Borja's consultative exam report which details a thorough physical examination. (ECF No.9, pp.243-247).
[10] The SVP is used to measure the skill level required for a job. Unskilled work corresponds to an SVP of 1-2 and semi-skilled work corresponds to an SVP of 3-4. *See* SSR OO-4P (Policy Interpretation Ruling).

The ALJ then asked if that hypothetical individual could do other work. *Id.* The VE replied there were three representative occupations (cashier II, companion and electronics worker), that the individual could perform, all of which exist in significant numbers in the national economy and Colorado. *Id.*

In a decision dated September 19, 2011, the ALJ found that plaintiff was insured through September 30, 2014 and had not engaged in substantial gainful activity since January 1, 2010, the alleged onset of disability date. (ECF No.9, pp.18-25.) The ALJ found that plaintiff had impairments of EB and degenerative disc disease of the lumbar spine which were severe and impairments of learning disorders and depression which were not severe. (ECF No.9, pp.20-21).

At step three, the ALJ found plaintiff's spinal condition did not meet the requirements for a listing for orthopedic impairments and his EB condition did not meet the requirements under section 8.03. (ECF No.9, p.21.)(citing 20 C.F.R. 404.1520(d, 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The ALJ explained that although Dr. Piantanida opined plaintiff's condition met the section 8.03 listing, there was insufficient support in the record to establish that plaintiff had experienced extensive skin lesions that persisted (as the listing required), for at least three months, noting that the record lacked any "evidence to establish the level of persistence of severe skin lesions as required by the listing.". *Id.*

The ALJ determined that plaintiff had the residual functioning capacity (RFC), to perform light work, modified as follows: sit up to six hours in a regular 8-hour workday; stand/walk for up to four hours; lift and carry up to ten pounds frequently, and up to 20 pounds occasionally; push and pull with his upper and lower extremities within the mentioned weight restrictions; never climb ladders, ropes or scaffolds; avoid unprotected heights and moving machinery; occasionally reach overhead bilaterally; and occasionally stoop, crouch, kneel, crawl, or climb ramps and stairs. *Id.*

The ALJ's findings were based on her determination that while plaintiff's medically determinable impairments could reasonably be expected to cause some pain and associated functional limitations, plaintiff's statements concerning the intensity, persistence and limiting effects were not credible to the extent that they were unsupported by the record. (ECF NO.9, p.22).  Specifically, the ALJ noted that the record contained several instances where contrary to plaintiff's testimony, the examining physicians (such as Dr. Piantanida and Dr Telfer) observed one or two or no blisters or lesions. (ECF No. 9, p.23).  The ALJ thus determined that there was insufficient objective medical evidence to support plaintiff's contention as to the frequency and extensiveness of his skin lesions. *Id.* The ALJ detailed that she based her credibility findings on plaintiff's inconsistent statements/testimony regarding his limitations in his daily living, his substantial gainful activity for many years despite his lifelong EB; his failure to seek or require medical care for more than 20 years and his lack of prescribed medications or treatments other than topical creams[11]. *Id.*

With regard to the opinion evidence, the ALJ gave Dr. Borja's opinion "great weight," concluding this opinion was supported by gave Dr. Borja's examination findings and the evidence as a whole. (ECF No.9, p.24).  The ALJ discounted Dr. Piantanida's opinion, concluding it appeared to be based primarily on plaintiff's subjective reports, and was inconsistent both with Dr. Piantanida's own examination findings and Dr. Telfer's findings, particularly his recommendation of five mile walks for exercise. *Id.*.

The ALJ found plaintiff was not disabled despite being unable to perform his past relevant work because, considering his age, education, work experience, RFC and the VE's testimony, there were jobs that existed in significant numbers in the national economy that he could perform. (ECF no.9, pp.18-25).

---

[11] I note that while the ALJ did not have the 1989 and1999 Stanford medical records, the appeals council did. (ECF No.9, p.2). I further note that upon consideration of these records the appeals council found that their inclusion did not affect the decision about whether plaintiff was disabled beginning on or after January 1, 2010. *Id.*

## III. DISCUSSION

Plaintiff's third application for DIB and SSI, received a favorable decision dated April 23, 2013, in which he was awarded benefits upon a finding that he was disabled since September 20, 2011 (the day after the disputed Commissioner's decision became final). (ECF No.17-1). The statement of award provides the only proffered support for plaintiff's request for a sentence four remand. (ECF No.17). Plaintiff presents no evidence regarding the basis upon which that award was made. Despite that lack, plaintiff argues that the Commissioner's 2013 award of disability benefits as of September 20, 2011 shows that the ALJ's September 19, 2011 decision was not supported by substantial evidence and therefore should be reversed for payment of benefits under sentence four or alternatively remanded under sentence six. (ECF No.13; ECF No.17 (citing 42 U.S.C. §405(g)).

Plaintiff also challenges the ALJ's determinations at steps three and five. At step three, plaintiff contends: (1) the ALJ failed to properly evaluate the medical evidence which supported a finding that his EB impairment met or equaled a listing, namely, 8.03 of Skin Disorders; and (2) the ALJ should have employed a medical expert (ME) to opine as to whether the combination of plaintiff's severe impairments medically equaled one of the listed impairments.

At step five, plaintiff argues that the ALJ's conclusion that he could perform jobs identified by the VE was in error because the ALJ's RFC determination was deficient in that she discounted Dr. Piantanida's, opinion; failed to adequately consider all of plaintiff's combined impairments; failed to properly evaluate his subjective complaints; improperly relied on the "companion" job an SVP 3, semiskilled work, when plaintiff's past relevant work was unskilled SVP 2 level work; and relied on three jobs all of which require frequent reaching, handling and fingering despite lacking substantial evidence that plaintiff could perform the frequent manipulation requirements of those jobs. (ECF No.13).

Defendant counters that this court's decision must be based on the evidence in the administrative record which did not contain the subsequent award of benefits. (ECF No.21, p.2). Defendant contends that the subsequent award does not constitute new and material evidence sufficient to permit remand under sentence four of 42 U.S.C. § 405(g). (ECF No.16). Additionally defendant argues, the ALJ's findings were supported by substantial evidence in the record such as: Dr. Borja's functional assessment; plaintiff's sporadic or complete lack of need for medical treatment and the lack of evidence that the lesions were extensive or persisted for at least three months despite treatment as the listing required. (ECF No. 16, pp.12-22 and ECF No. 21).

A district court's authority to remand a social security case to the agency is limited by statute to three carefully delineated circumstances under either sentence four or sentence six of 42 U.S.C. §405(g)[12]. These circumstances constitute the only support for remand available. *Melkonyan v. Sullivan,* 501 U.S. 89, 99 (1991).

A sentence-four remand permits the district court to "remand the case after passing on its merits and issuing a judgment affirming, reversing, or modifying the [Commissioner's] decision." *Nguyen v. Shalala* 43 F.3d 1400, 1403 (10th Cir. 1994). A sentence six remand is permitted without the court ruling on the merits if either, the Commissioner requests remand or, new and material evidence comes to light, and there is good cause for failing to incorporate such evidence in the earlier proceeding. *Id.*

---

[12] Title 42 U.S.C. §405(g) provides as follows.

Sentence four:

"The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. . . . "

Sentence six: '

"The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . "

The Tenth Circuit has not yet addressed whether an award of benefits by itself constitutes new and material evidence although several district courts in this circuit have wrestled with the issue. These Tenth Circuit district courts have generally found that a subsequent favorable decision by itself, is insufficient to warrant a remand. See e.g., *Mosley v. Astrue*, 2010 WL 3777232 (D.Colo Sept.20, 2010)(unpublished)(subsequent award of benefits standing alone does not mandate remand); *Baker v. Astrue* 2012 WL 5878876 (N.D.Okla. Oct.15, 2012)(unpublished)(plaintiff did not establish that subsequent award of benefits relevant and material to his appeal); *Greene v. Astrue*, 2011 WL 2671313 (D.Kan. July 8, 2011)(unpublished)(remanded under sentence six based on Commissioner's decision to consider new material). Other circuits considering this issue have had inconsistent results

The courts denying remand have generally reasoned that a sentence six remand requires new evidence that might have changed the outcome of the prior proceeding and thus, a remand is appropriate only if the claimant made a showing that the subsequent decision: (a) was supported by new and material evidence that the claimant had good cause for not raising in the prior proceeding; *and* (b) might have changed the outcome of the prior proceeding. See e.g., *Allen v. Commissioner of Soc. Sec.*, 561 F.3d 646, 653-655 (6th Cir. 2009)( remand not appropriate given that plaintiff failed to show new evidence that is material). Such a showing was required because for example, the second application might be based on a change in the claimant's condition (such as entering a new age classification), that occurred after the initial determination. See e.g., *Allen,* supra at 653-654. *Cf. Douglas v. Commissioner of Soc. Sec.*, 04-166235, 2005 WL 3116634 (11th Cir. Nov. 23, 2005) (subsequent award of benefits irrelevant to ALJ's decision).

The courts that have remanded the case generally did so to allow the ALJ to review the second application to see if the claimant may have presented different medical evidence that might support the two applications or whether there might be some other reason to explain the change. See e.g., *Luna v.*

*Astrue*, 623 F.3d 1032, 1034-35 (9th Cir. 2010)(award of benefits one day after date plaintiff found not disabled warrants remand for further factual consideration).

I find the more reasoned analysis is that articulated by most courts namely that a subsequent award standing alone, is insufficient to meet the requirements for a section 405(g) sentence six remand. In this instance, plaintiff has failed to meet his burden to adduce new evidence indicating that a remand would be indicated. Similarly, a remand for an award of benefits under sentence four is unsupported and therefore not appropriate.

In terms of the Step Three determination, the ALJ was correct that the medical evidence in the record did not establish "extensive skin lesions that persist for at least three months despite continuing treatment as prescribed" as required by Listing 8.03. In plaintiff's opening brief he simply retyped excerpts of medical records discussing his skin condition – including records that significantly pre-date the period of alleged disability. Plaintiff in his reply brief (ECF No.17), argues that these records indicate that his "condition" i.e. epidermolysis bullosa, has persisted for more than three months. (ECF No.17, p.8). However, that is not a listing requirement and the court's review of the limited medical evidence in the administrative record supports the ALJ's conclusion that the record lacks evidence of lesions persisting for at least three months despite continuing treatment. Similarly I find the ALJ's Step Five determination did properly weighed the medical evidence.

The remaining issue is whether there is substantial evidence supporting the ALJ's findings. I conclude that there was, both at her Step Three and Step Five determinations. The ALJ considered plaintiff's subjective complaints and found based *inter alia,* on the opinion evidence; the contrary medical records; his ten year paucity of medical treatment; his testimony regarding his daily activities; his alleged total inactivity and reliance on his wife to perform all chores (including driving) when she has been adjudicated as totally disabled; and his past ability to work in jobs which were more

demanding[13] than those identified by the VE, despite his life-long EB; that plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not fully credible. Credibility determinations are the specific province of the fact finder which shall not be disturbed if as here, they are supported by substantial evidence. *Diaz v. Sec. of Health and Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990).

While plaintiff argues essentially, that the ALJ should have weighed the evidence differently, this court is not at liberty to re-weigh the evidence but is limited to determining whether the correct legal standards were applied and the decision is supported by substantial evidence in the record. After a complete review of the record, I find the ALJ's findings are supported by substantial evidence in the record and she applied the correct legal standards.

## IV CONCLUSION

For the reasons detailed above, the Commissioner's September 19, 2012, final decision is AFFIRMED.

IT IS SO ORDERED

DATED this 8th day of July, 2015.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

[13] Plaintiff is correct that the ALJ's determination that he could perform the job of companion at an SVP 3 is erroneous. However, excluding the companion job still leaves a significant number of other jobs available, thus, any error in including that job is harmless.